# EDWIN CHARLES BERNOS *v.* STATE OF MARYLAND

[No. 492, September Term, 1969.]

*Decided August 18, 1970.*

The cause was argued before MURPHY, C.J., and AN-DERSON, MORTON, ORTH, and THOMPSON, JJ.

*Philip M. Sutley* for appellant.

*Donald Needle, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Samuel A. Green, Jr., State's Attorney for Baltimore County,* and *William Blondell* and *Carville M. Downes, Assistant State's Attorneys for Baltimore County,* on the brief, for appellee.

MORTON, J., delivered the opinion of the Court.

Appellant was convicted of second degree murder by a jury in the Circuit Court for Baltimore County and sentenced to a term of thirty years.

In this appeal he contends that the court erred in permitting a police officer to testify "as to certain incriminating statements" made by appellant "without conducting a hearing as to voluntariness outside of the presence of the jury." It is true that this Court has ruled that evidence as to the voluntariness of a confession or statements made by an accused should first be taken out of the presence of the jury for the purpose of enabling the trial judge to make a preliminary determination as to their admissibility. *Barnhart v. State,* 5 Md. App. 222. Although the taking of such evidence in the presence of a jury is not a commendable practice, we have held that where the statements were found to be admissible by the presiding judge, no reversible error was committed. *Dennis v. Warden,* 6 Md. App. 295. While it appears that the first part of appellant's statements did come into evidence in the presence of the jury, there was no request by counsel for the defense that the jury be excluded and the court did exclude the jury as soon as it became apparent that the admission of appellant's statements was to be contested. Moreover, the trial judge found the statements to be admissible. Under these circumstances, we find no reversible error.

It is next contended that the court erred in ruling that the statements were admissible. We disagree. Officer Michael W. Arnetta testified that on May 22, 1969, at approximately 6:30 p.m., he received a call over the police radio "of an injured woman at 8401 Liberty Road." Upon his arrival there he was met by a fellow officer who, when asked by Officer Arnetta "What happened?", replied: " 'I don't know'; that the ambulance had already taken the woman from the cellar to the hospital." Officer Arnetta testified that he then went into the bedroom of the house, found the appellant lying on the bed and "I

asked Mr. Bernos what happened?" According to the officer, appellant "replied that he had an argument with his wife Frances Patricia Murphy,[1] the previous day and she went down to the basement and locked the door, remaining all night. * * * Mr. Bernos then went to the basement also and * * * there was a struggle and in the struggle the gun went off. When I learned that a gun was used to injure Mrs. Murphy I asked permission to use the phone in the bedroom to summon a sergeant." According to the transcript of testimony, the following colloquy took place:

"Q. Did you call your sergeant at that time?
A. Yes.
Q. And, what if anything took place while you were making the telephone call?
A. While I was on the phone, Dr. Bernos was still talking.
Q. Were you talking to him or was he just talking?
A. He was just talking.
Q. What, if anything, did he say?
* * *

"A. That he tried to kiss his wife but there was no response. That he removed the gun from his back pocket and pointed it at her.
Q. Did he say anything further?
A. No.
Q. At this point, did you complete your telephone conversation?
A. Yes, I did."

The trial judge ruled, and from our review of the evidence we cannot disagree, that the appellant's statements were not the result of a custodial interrogation within the ambit of *Miranda v. Arizona,* 384 U. S. 436, as contended by the appellant then and as he contends in this

---

1. It appears that Miss Murphy was not his wife but formerly a maid in his home at a time when he and his lawful wife were living together.

appeal. A "custodial interrogation" within the meaning of *Miranda* is "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom in any significant way." As this Court indicated in *Gaudio and Bucci v. State,* 1 Md. App. 455, 460, the evils which *Miranda* sought to avoid were the questioning of an individual in a hostile atmosphere such as the "isolated setting in the privacy of an interrogation room in a police station" and having the individual's will overborne by "techniques of persuasion" employed by police.

It is true that the Supreme Court of the United States in *Orozco v. Texas,* 394 U. S. 324, held that the questioning of an individual in his bedroom by four police officers was encompassed by the strictures of *Miranda* but in the factual posture there, unlike here, "petitioner was under arrest and not free to leave when he was questioned * * *." In the case at bar, when the appellant was asked the question, "what happened?", he was not under arrest or restraint. According to the officer, "I didn't even know a crime had been committed at this time." Under these circumstances we cannot find that appellant's statements to the officer were the result of a "custodial interrogation" as defined in *Miranda v. Arizona, supra.* See *Duffy v. State,* 243 Md. 425; *Simms v. State,* 4 Md. App. 160; *Morgan v. State,* 2 Md. App. 440.

We find no merit in appellant's next contention that the trial judge erred "in allowing the prosecuting attorney to question Officer Michael W. Arnetta on redirect examination as to certain portions of the official police investigation report * * *." The officer had noted on cross-examination that his "police report" erroneously reflected that certain statements were made by appellant after the officer had "hung the phone up" and that, in fact, the statements were made while he "was still on the phone." On redirect examination by the State, and over objection by defense counsel, the officer was permitted to read portions of the police report containing statements by appellant. Ordinarily, the scope of cross-examination

as well as redirect examination is within the sound discretion of the trial judge. *Hall v. State,* 6 Md. App. 356, 363; *Scott v. State,* 2 Md. App. 705, 708. We find no abuse of that discretion under the circumstances here. The officer had been questioned about a particular part of the report on cross-examination and we see no harm in permitting questions on redirect examination concerning other parts of the report, particularly since the facts brought out were, in substance, already before the jury through previous testimony. See *Fisher Body Division v. Alston,* 252 Md. 51, 56.

It is next contended that the trial judge erred in advising appellant, in the presence of the jury, of his constitutional right not to testify. No objection was made to this procedure at trial and the question is not properly before us. Maryland Rule 1085. Although we find that appellant was not subjected to any prejudice as a result of the procedure followed by the trial judge in this instance, we are of the opinion that when an accused is advised of his constitutional right to decline to testify, such advice should be given out of the presence of the jury.

Appellant finally contends that the trial judge erred in failing to instruct the jury on the question of the voluntariness of appellant's statements. No request for such an instruction was made by appellant and no exceptions were taken to the instructions as given. Accordingly, the issue has not been preserved for review by this Court. Md. Rules 756 f, g, and 1085.

*Judgment affirmed.*
*Appellant to pay costs.*