ROLAND G. WRIGHT, THE YOUNGER *v.* STATE OF MARYLAND

[No. 708, September Term, 1974.]

*Decided May 5, 1975.*

The cause was argued before ORTH, C. J., and MASON, J., and IRVING A. LEVINE, Associate Judge of the Court of Appeals, specially assigned.

*Roland Walker* for appellant.

*Alexander L. Cummings, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,*

*Milton B. Allen, State's Attorney for Baltimore City,* and *Sam Brave, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

LEVINE, J., delivered the opinion of the Court.

This appeal is from convictions on charges of storehouse breaking and receiving stolen goods following a jury trial in the Criminal Court of Baltimore. Appellant, Roland G. Wright, the Younger, also had been charged with a number of other offenses allegedly arising out of the same occurrence, but they were eliminated from the case by judgments of acquittal granted by the trial judge (Watts, J.). Because of the limited issue to be dealt with in this opinion, a detailed summary of the facts is unnecessary.

On the morning of January 5, 1974, it was discovered that sometime during the previous evening, the premises of Fort Haulage and Rental Company, Inc. had been burglarized, and property exceeding $4,000 in value had been taken. Within several hours, the investigation focused on appellant, mainly because of an identification of the license tags on his pick-up truck.

At the trial, a police detective testified that after appellant was arrested, he was advised of his rights under *Miranda v. Arizona,* 384 U. S. 436, 86 S. Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974 (1966), and that he then signed a police department waiver form. Thereafter, he was interrogated and, in the course of responding to a series of questions, claimed that he had been at home while the crimes were allegedly committed. Then, this exchange occurred during the detective's testimony:

> "Q Did he ever at any later point offer, agree to answer your question as to whether anyone had borrowed [his] truck that evening?
>
> "A No, he didn't. He refused.
>
> "MR. STANCIL: Your Honor, I'm going to object.
>
> "THE COURT: Overruled."

In addition to attacking this ruling, appellant alleges several other errors. The first category consists of two purported defects in the instructions to the jury, one respecting the charge of receiving stolen goods and the other pertaining to the defense of alibi. Subsequent to the filing of appellant's brief, however, the State submitted an affidavit of the court reporter with a corrected transcript. The latter eliminates any possible doubt that the original transcript of testimony was garbled in the two instances concerning us here. We accept the corrections furnished by the reporter, therefore, especially since the transcription errors are so obvious. As so corrected, the record completely undercuts the arguments advanced by appellant, and obviates any need to consider them here.

Additionally, appellant raises a number of other grounds for reversal which bear on the sufficiency of the evidence. We need not reach these questions either, since a new trial will be necessary in any event.

In our view, the issue presented by appellant's refusal to answer the detective's question "as to whether anyone had borrowed [the] truck that evening" is controlled squarely by the decision of the Court of Appeals in *Younie v. State*, 272 Md. 233, 322 A. 2d 211 (1974). There, the Court held that the Fifth Amendment rights of the accused, as enunciated in *Miranda*, had been violated by evidence that after the fourfold warnings mandated by that decision had been given, he had refused to answer several questions which were interspersed among a total of twenty-four. In so holding, the Court emphasized these statements from *Miranda*, which it also quoted:

> " 'If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease. At this point he has shown that he intends to exercise his Fifth Amendment privilege; any statement taken after the person invokes his privilege cannot be other than the product of complusion, subtle or otherwise.' 384 U. S. at 473-74.

" 'Moreover, where in-custody interrogation is involved, there is no room for the contention that the privilege is waived if the individual answers some questions or gives some information on his own prior to invoking his right to remain silent when interrogated.' *Id.* at 475-76.

" 'In accord with our decision today, it is impermissible to penalize an individual for exercising his Fifth Amendment privilege when he is under police custodial interrogation. The prosecution may not, therefore, use at trial the fact *that he stood mute* or claimed his privilege in the face of accusation.' *Id.* at 468, n. 37." 272 Md. at 241 (emphasis added).

As we said in *Burko v. State,* 19 Md. App. 645, 652, 313 A. 2d 864 (1974), "[s]uch tactics [permitting the police to testify that the accused remained silent when confronted with an accusatory statement], if allowed, would have cloaked the precepts of *Miranda* in an armor of gauze." In short, to admit such evidence would effectively penalize the accused for exercising his Fifth Amendment privilege. *Accord, United States v. Matos,* 444 F. 2d 1071 (7th Cir. 1971); *Fowle v. United States,* 410 F. 2d 48, 54 (9th Cir. 1969); *Baker v. United States,* 357 F. 2d 11 (5th Cir. 1966); *Fagundes v. United States,* 340 F. 2d 673 (1st Cir. 1965); *People v. Lampson,* 129 Ill.App.2d 72, 262 N.E.2d 601 (1970); *State v. Dearman,* 198 Kan. 44, 422 P. 2d 573 (1967), *cert. denied,* 396 U. S. 895 (1969); *People v. Severance,* 43 Mich. App. 394, 204 N.W.2d 357, 359 (1972); *State v. Roberts,* 296 Minn. 347, 208 N.W.2d 744 (1973); *State v. Beck,* 289 Minn. 287, 183 N.W.2d 781 (1971); *People v. Abdul Karim Al-Kanani,* 26 N.Y.2d 473, 311 N.Y.S.2d 846, 260 N.E.2d 496 (1970); *Commonwealth v. Haideman,* 449 Pa. 367, 296 A. 2d 765, 767 (1972); *cf. Miller v. State,* 231 Md. 215, 218, 189 A. 2d 635 (1963).

The State distinguishes this case from *Younie* with the argument that the question which appellant refused to answer was innocuous, since a response merely would have incriminated someone else. This is manifestly correct, but

only if we assume the answer would have been that someone else had borrowed the truck. We cannot make this assumption. It is equally possible that appellant would have been compelled to reveal that no one had borrowed it. In a case where the ownership of the truck, containing property taken during the burglary, linked appellant to the crime, a negative response would have been just as incriminating as an affirmative answer might have been in *Younie*. In sum, appellant's refusal to answer might well have resulted from his awareness that to respond would have amounted to an admission of his exclusive possession of the truck, used to commit the crimes, during the critical period.

Nor do we find merit in the State's contention that the error was harmless beyond a reasonable doubt under *Chapman v. California*, 386 U. S. 18, 21, 87 S. Ct. 824, 17 L.Ed.2d 705, 24 A.L.R.3d 1065 (1967). *Younie* is similarly apposite here. The test adopted there in the face of a similar contention of harmless error was that if the error goes to a substantial constitutional right, as it does here, then unless the state can prove beyond a reasonable doubt that the error *"in no way influenced the verdict* such that the defendant would undoubtedly have been found guilty even if [the erroneously admitted] evidence had not been received, its employment will always be error." *Younie v. State, supra,* 272 Md. at 247 (emphasis in original). Because we are unable to say that under the particular facts of this case, the violation of appellant's Fifth Amendment rights "in no way influenced the verdict," the error here was not harmless beyond a reasonable doubt.

Since appellant's refusal to answer the detective's question was erroneously admitted into evidence, the trial court should have stricken it from the record while issuing a curative instruction to the jury.

> *Judgments reversed; remanded for a new trial; costs to be paid by the Mayor and City Council of Baltimore.*