326 So.2d 477 (1976)
STATE of Louisiana
v.
Henry Lee NED.
No. 56774.
Supreme Court of Louisiana.
January 19, 1976.
Leon J. Minvielle, III, New Iberia, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Knowles M. Tucker, Dist. Atty., Dracos D. Burke, Asst. Dist. Atty., for plaintiff-appellee.
*478 CALOGERO, Justice.
Henry Lee Ned was charged by bill of information with the commission of simple arson of a school building in Jeanerette, Louisiana, with damage amounting to more than five hundred dollars, in violation of La.R.S. 14:52. After trial by jury, defendant was found guilty and sentenced to serve seven years at hard labor in the custody of the Louisiana Department of Corrections.
Defendant relies upon three specifications of error each relative to the trial judge's admitting oral and written statements and a confession. His motion to suppress, his objection to the admission of the statements, and his new trial application were each founded upon the contention that the statements were not freely and voluntarily given, were the product of fear, intimidation, threats or promises, and were given without the requisite compliance with Miranda.
The pertinent facts are these. On November 14, 1974, the Jeanerette High School in Jeanerette, Louisiana was destroyed by fire. On the morning of February 4, 1975, while Mr. Sam Scelfo, juvenile director, and Mr. Leonard Morris, a juvenile officer of the Iberia Sheriff's Office, Juvenile Division, were interviewing a juvenile in connection with a recent burglary, the juvenile volunteered the information that his half-brother, defendant in this case, was involved in the earlier burning of Jeanerette High School. Mr. Morris and Mr. Scelfo sent for the sheriff, who also talked with the juvenile. A woman who was the mother of both the juvenile and the 17 year old defendant, had accompanied her juvenile son to the sheriff's office. She was in the next room and overheard the child implicate defendant. She unceremoniously left the office, picked up defendant and another juvenile (defendant's cousin) who had also been implicated, and, at about 1:00 p.m., returned with them to the Courthouse. The officers had not been expecting defendant, were not prepared to interview him immediately, and, therefore asked him and his cousin to wait in the lobby area of the courthouse. They were not placed under guard or otherwise restrained.
At approximately 2:00 p. m., defendant was called into the juvenile officer, and between 2:00 p. m. until 3:30 p. m. he was asked intermittent questions about his family, his brother and his schooling. At 3:30 p. m., defendant was read his Miranda rights, was told what the officers wanted to interview him about, and signed a rights form. After being so advised of his rights, defendant confessed to setting the school on fire.
Mr. Morris testified that defendant, although not reluctant to state that he had committed the offense, was reluctant to discuss the details. Defendant was then taken to the Sheriff's Office where he was again given his rights by Sheriff Wattigny. At this point defendant appeared nervous and was asked if he preferred to talk just to Mr. Morris, out of the presence of Mr. Scelfo and the sheriff. When defendant answered affirmatively, Mr. Morris and defendant went into a conference room adjoining the sheriff's office, where defendant stated that he was frightened. He was told by Mr. Morris that he had nothing to be afraid of. After about five minutes, they returned to the sheriff's office and defendant was interrogated by the sheriff, Mr. Scelfo and Mr. Morris for approximately twenty minutes.[1] At the conclusion of this interrogation a black female secretary, who had not been in the interview room, was sent into the conference room alone with defendant and she took down his statement.
Before confessions or inculpatory statements may be introduced in evidence, *479 the State must affirmatively show that they were freely and voluntarily given and were not coerced by fear, intimidation, threats or promises. La.R.S. 15:451. See State v. Link, 301 So.2d 339 (La.1974); State v. Bray, 292 So.2d 697 (La.1974); State v. Skiffer, 253 La. 405, 218 So.2d 313 (1969). In addition, the federal Constitution as interpreted by the United States Supreme Court, requires that the State, before it may use a confession at trial, establish that a defendant was informed of his right against self-incrimination and to have an attorney present at the interrogation; that he fully understood the consequences of waiving those rights; and that he did in fact waive those rights voluntarily and without physical or mental coercion. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). These socalled Miranda warnings must be given prior to interrogation "after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." Miranda, supra, 384 U.S. at 444, 86 S.Ct. at 1612. They are not required where there is "general questioning of citizens in the fact-finding process," Miranda, supra, 384 U.S. at 477, 86 S.Ct. at 1629, but only when the investigation has ceased to be exploratory in nature, i. e., when the authorities begin to focus their attention on defendant as the guilty party and seek to secure inculpatory statements from him. State v. Tarrance, 252 La. 396, 211 So.2d 304 (1968). See Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964); State v. Amphy, 259 La. 161, 249 So.2d 560 (1971).
Although the United States Supreme Court has not spoken definitively as to when there is a custodial interrogation such that Miranda requirements must be met, other cases have identified four factors which should be considered: (1) whether there is probable cause to arrest; (2) the subjective intent of the police; (3) the objective belief of the defendant; and (4) the focus of the investigation. United States v. Carrollo, 507 F.2d 59 (5th Cir. 1975); Brown v. Beto, 468 F.2d 1284 (5th Cir. 1972); United States v. Phelps, 443 F.2d 246 (5th Cir. 1971). Decisions on whether or not there is a custodial interrogation must be made on a case-by-case basis. United States v. Carrollo, supra.
In the present case, it is clear that when defendant first arrived at the Juvenile Division of the sheriff's office, custodial conditions were not present. The authorities had not requested defendant's presence and were apparently surprised that his mother had brought him to the Courthouse. Defendant was not confined or guarded while waiting for his interview. Furthermore, the officers had only the word of defendant's juvenile half-brother, apparently already in some difficulty himself, that defendant had something to do with the Jeanerette High School fire, a matter which was not a subject of the officers' inquiry.
It was juvenile officer, Officer Morris, like the defendant a black man, who testified that he engaged defendant in intermittent conversation concerning defendant's place of residence, his family and his school work, about 15 minutes of actual conversation, between 2:00 p. m. and 3:30 p. m. He further testified in effect that when he began to suspect that there may be substance to the unsupported implicating statement earlier given by defendant's half-brother, at about 3:30 p. m., he read defendant his Miranda rights and told defendant what the sheriff's office wanted to interview him about. Officer Morris stated that prior to this time nothing had been said about the fire and defendant had made no inculpatory or incriminating statement.
Considering the unusual circumstances surrounding the incipience of defendant's interrogation, the fact that defendant's conversation was with a juvenile officer who was not investigating the school fire, the limited and nonincriminating initial *480 conversation, and the officer's expressed lack of real suspicion prior to 3:30 p. m., when defendant was given his Miranda rights, we conclude that no custodial interrogation in the sense that the term is contemplated in Miranda took place prior to 3:30 p. m. on the date in question.
Defendant also argues that his confession and inculpatory statements were inadmissible, even assuming they followed timely advice concerning his rights, because he showed "reluctance" to discuss the crime at various times during the interview. The Miranda guidelines on custodial interrogation state that "[i]f the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease." Miranda, supra, 384 U.S. at 474, 86 S.Ct. at 1627. In the present case, although Mr. Morris did testify that at times defendant was reluctant to discuss the details of the crime, he stated affirmatively that defendant was never reluctant to admit that he committed the offense. When defendant was taken to the sheriff's office, he was allowed to speak to Mr. Morris alone, out of the presence of the sheriff and Mr. Scelfo, and he willingly returned to submit to questioning.
The reluctance involved in this case was apparently more in the nature of hesitation and nervousness than an expression that defendant preferred to remain silent. The reluctance was manifested not by anything which defendant said but rather by pauses and silence indicating that he was thinking about what to say and how to say it. According to testimony of the state's witnesses, which is not contradicted by defendant, defendant never said that he did not want to make a statement.
Defendant's testimony that he was under the influence of drugs at the time he confessed, so that he did not know what he was doing, was adequately refuted by witnesses for the state, and there was no showing of error in the trial court's finding in this regard.
The facts of this case amply support a conclusion that defendant was informed of his rights before or at the time the interrogation became custodial, and that defendant voluntarily confessed to arson. A factual determination by the trial court that a confession or inculpatory statement was freely and voluntarily made is given great weight and will not be disturbed upon appeal unless clearly erroneous. State v. Sims, 310 So.2d 587 (La.1975); State v. Cosey, 261 La. 550, 260 So.2d 620 (1972).
By way of caveat, we feel compelled to state that, although under the facts of this case we conclude that the requirements of Miranda were met, we by no means condone unwarranted delays in informing suspected persons of their constitutional rights. Custodial interrogation is an awesome experience for most people who are or may be charged with crime, and it would defeat the purpose of the Miranda warnings to allow law enforcement officials to wait until a suspect has suffered the effects of psychological coercion before informing him that he is not obliged to incriminate himself and that he has the right to the presence of counsel. Our conclusion here that defendant's Miranda rights were not violated does not turn on the fact simply that the warnings were given prior to receipt of any inculpatory statements, but rather on the totality of circumstances surrounding the interrogation.
For the foregoing reasons, the sentence and conviction are affirmed.
NOTES
[1] This interrogation was tape recorded but the recording was not admitted at trial for lack of proper foundation.