332 So.2d 452 (1976)
STATE of Louisiana
v.
Clifton ANDERSON, Sr.
No. 57352.
Supreme Court of Louisiana.
May 17, 1976.
*454 W. Glenn Soileau, Ville Platte, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., J. William Pucheu, Dist. Atty., A. Bruce Rozas, Asst. Dist. Atty., for plaintiff-appellee.
SANDERS, Chief Justice.
Defendant, Clifton Anderson, Sr., was charged with attempted murder of two persons in separate indictments. After trial by jury, defendant was found guilty of attempted murder of Clifton Williams, Jr., and guilty of attempted manslaughter of Versie Soileau. The trial judge sentenced defendant to twelve years imprisonment for attempted murder and six years imprisonment for attempted manslaughter, the sentences to run consecutively.
On appeal, defendant relies upon five assignments of error for reversal of his conviction and sentence.
The background facts are that defendant's son became involved in an altercation with Clifton Williams, Jr., in a combination grocery store and pool hall in Evangeline Parish. On learning of the controversy, the defendant came to the store armed with a pistol. He fired several shots at Williams, missed him, but wounded Versie Soileau, the daughter of the store owner.

ASSIGNMENT OF ERROR NO. 1
Defendant alleges that the court erred in excluding Negroes from the petit jury and Grand Jury because they could not read and write the English language.
During the course of voir dire examination of prospective jurors, the State challenged for cause certain persons who testified that they could not read or write. The Court sustained the challenges, and defendant objected.
In brief, defense counsel argues that in a rural parish, such as that in which this case was tried, excluding persons who cannot read and write serves along with the use of peremptory challenges as a systematic exclusion of black persons from juries, constituting invidious discrimination and a denial of equal protection under the law.
Defendant's allegations are without merit. Article 797 of the Louisiana Code of Criminal Procedure provides that either the State or the defendant may challenge a juror for cause on the ground that the juror lacks a qualification required by law. One qualification is that a juror be able to read, write, and speak the English language. LSA-C.Cr.P. Art. 401(3).
In challenging the jury selection process on the basis of invidious discrimination against a class of persons, the burden is on the defendant to make out a prima facie case of a systematic exclusion. Alexander v. Louisiana, 405 U.S. 625, 92 *455 S.Ct. 1221, 31 L.Ed.2d 536 (1972); Whitus v. Georgia, 385 U.S. 545, 87 S.Ct. 643, 17 L.Ed.2d 599 (1967).
Here, defendant has failed to show any systematic exclusion of black persons or any disproportionately low representation of blacks on juries or jury venires in Evangeline Parish. He, therefore, has failed to make a prima facie showing. State v. Butler, La., 302 So.2d 585 (1974); State v. Leichman, La., 286 So.2d 649 (1973). In the absence of a prima facie showing of an historical, systematic pattern of exclusion of black jurors, the motive for the exercise of the peremptory challenge is not subject to our review. State v. Reed, La., 324 So.2d 373 (1975).
Furthermore, eight prospective jurors were excused because they could not read or write and because they could not understand the English language. Of those eight, the record discloses the races of only five; two of the five prospective jurors were white and three were black. Thus, the record refutes the contention that the literacy qualification operated against blacks only.
Assignment of Error No. 1 is without merit.

ASSIGNMENTS OF ERROR NOS. 2 AND 3
In these assignments of error, defendant alleges that the court committed reversible error in refusing to allow defendant to summon the foreman of the Grand Jury to verify his signature on the indictment and that reversible error was committed when the official court record failed to show that the indictment was returned or even filed in the official court record of his case.
When the indictment was to be read, the clerk noticed that the indictment forms were not in the jacket in which he had the material pertaining to the case. Out of the presence of the jury, the court discovered that the indictments had been removed from the jackets by the district attorney for study and had inadvertently not been returned by him. The judge stated that the procedure in that court was that the district attorney, judge, or defense counsel could remove items from the folder. The trial judge stated that there was no question of authenticity, just that they had been temporarily misplaced. Thus, the court denied defendant compulsory process to obtain the foreman of the Grand Jury to identify his signature. On a factual basis, we can find no merit to defendant's argument.
In Assignment of Error No. 3, defendant contends that reversible error was committed when the official court records failed to show that the indictment was returned or even filed in the official court record. Initially we note that we are unable to locate defendant's objection in the record. Additionally, the minutes of the court filed in the record before us show that an indictment for attempted murder was filed on November 30, 1972.
In brief, defense counsel notes that on the face of one of the bills of indictment is marked: "Filed November 30, 1973." The outside of the indictment, however, shows the date of November 30, 1972. The latter date is obviously correct, since the trial was conducted in February, 1973.
Defendant has raised the discrepancy for the first time on this appeal. This Court has consistently held that the alleged deficiencies in the Bill of Information or Indictment cannot be raised for the first time after conviction where in fact the defendant has been fairly informed of the charge against him, where the indictment does in fact charge a crime, when the defendant may be protected against further prosecution by the double jeopardy provision, and when he has not been prejudiced by surprise or lack of notice. State v. James, La., 305 So.2d 514 (1974). In the *456 present case, the 1973 date was obviously a clerical error.
Assignments of Error Nos. 2 and 3 are without merit.

ASSIGNMENT OF ERROR NO. 4
When it came time to read defendant's plea on the arraignment, it was noted that the official books, in which the court's minutes are kept did not contain the minutes of the arraignment or pleas of the defendant to the charges on December 5, 1972. The court removed the jury and allowed evidence to supplement the minutes. The deputy clerk of court explained that his normal method of taking the minutes is in handwriting on a shorthand book. On December 5, when he came to the last page he had a few entries left and he turned the page and wrote on the back the minutes of defendant's arraignment. When typing the minutes into the minute book, the clerk overlooked the entries on the back sheet. Also, the criminal court reporter, Eva C. Soileau, testified that she remembered very well her independent recollection that Clifton Anderson was arraigned on December 5 and pleaded not guilty. Upon hearing this evidence, the court ordered that the minutes be amended to reflect that Anderson was arraigned on both charges and pleaded not guilty to both on December 5.
At the time, defense counsel objected to the amendment of the minutes to show that defendant had been arraigned. He asked that a mistrial be granted because the minutes did not indicate defendant was ever arraigned. He never asserted that an arraignment did not in fact take place, but requested a mistrial because the minutes did not indicate that defendant had been arraigned.
This is a matter which addresses itself to the discretion of the trial court. We find no abuse of discretion.
Assignment of Error No. 4 is without merit.

ASSIGNMENT OF ERROR NO. 5
The defendant made this assignment of error to the admission in evidence of the pistol, allegedly used in the shooting, and an inculpatory statement of the defendant. He relies upon Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
The background facts are these: On September 24, 1972, Deputy Sheriff Donald Miller received a call to come to Soileau's Grocery and Pool Hall. When he arrived, he talked to several people and received a report that a shooting had occurred in which Clifton Anderson, Sr., an acquaintance of his, was allegedly involved. The Deputy was at the grocery from five to ten minutes. Without further investigation, he drove to Anderson's home, arriving there in about fifteen minutes. After he knocked at the door, Anderson came outside. The Deputy Sheriff advised him that anything he said "would be . . . evidence against him." In response to the Deputy Sheriff's general inquiry (what happened at Soileau's place?), Anderson freely related to Deputy Miller that he had shot at Clifton Williams, who was in a group "fixing to bunch up on his son," and that he did not intend to shoot the lady. He added that the gun was with his son, but did not inform the Deputy of the whereabouts of his son. The Deputy's contact with the defendant at the home lasted about five minutes.
After the defendant's statement to him, the Deputy Sheriff told the defendant he would have to come with him "until we could investigate it further." Anderson agreed. The Deputy Sheriff then drove to the hospital to check on the victim. As he entered the hospital lobby with the defendant, the defendant's son approached him and handed him the pistol, which he had in his pocket. Later, Anderson was taken to the Sheriff's office where "he was placed under arrest" and in jail. Apparently, the outside investigation continued.
*457 The following morning, Deputy Sheriff Aaron Fusilier decided to interrogate Anderson concerning the shooting. He first advised him of his rights.
The defendant then made a statement: "I shot at the man, I didn't mean to hurt the lady." He then identified the pistol as his and as the one he used in the shooting.
Defendant contends that the pistol was inadmissible, because it was obtained as a result of defendant's statement at his home, made to the law enforcement officer without being advised of his constitutional rights as required by Miranda v. Arizona, supra. He invokes the "fruit of the poisoned tree" doctrine. See Silverthorne v. United States, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319 (1920).
In Miranda v. Arizona, supra, the United States Supreme Court held that statements obtained from the interrogation of a person in police custody could not be used at trial unless the person had been previously advised of his rights: the right to remain silent; that any statement he makes can be used against him; the right to the presence of an attorney; that if he is unable to retain counsel, an attorney will be appointed for him prior to any questioning, if he so desires. The decision is directed to custodial interrogation. Although the court emphasized the "police-dominated atmosphere," custodial interrogation can occur in places other than a police station. See Orozco v. Texas, 394 U.S. 324, 89 S.Ct. 1095, 22 L.Ed.2d 311 (1969).
There can be no doubt that defendant did not receive the full four-fold warning when he emerged from his home in response to the knock of the Deputy Sheriff. As we have noted, the officer advised him only that anything he said could be used against him.
Under the circumstances of the present case, we think the defendant's statement at his home should be classified as non-custodial. The defendant made it immediately after coming outside his home in response to the Deputy's knock. The initial contact was one between acquaintances. The investigation, which at that point had lasted less than thirty minutes, was still in progress. Under the test announced in Miranda, the defendant had not at that time been "taken into custody or otherwise deprived of his freedom of action in a significant way." See State v. Ned, La., 326 So.2d 477 (1976).
Both the state and federal jurisprudence support the view that a single, general inquiry made to the defendant at his home during an investigation and prior to his arrest does not constitute custodial interrogation. See, e.g., United States v. Sicilia, 475 F.2d 308 (CA7 1973); Simon v. United States, 421 F.2d 667 (CA9 1970), cert. denied, 398 U.S. 904, 90 S.Ct. 1691, 26 L.Ed.2d 62; State v. Noriega, 6 Ariz.App. 428, 433 P.2d 281 (1967); People v. Fischetti, 47 Ill.2d 92, 264 N.E.2d 191 (1970); State v. McDonald, Iowa, 190 N.W.2d 402 (1971); Bernos v. State, 10 Md.App. 184, 268 A.2d 568 (1970); People v. P., 21 N.Y.2d 1, 286 N.Y.S.2d 225, 233 N.E.2d 255 (1967); State v. Crossen, 10 Or.App. 442, 499 P.2d 1357 (1972); Ison v. State, 281 Ala. 189, 200 So.2d 511 (1967); Stout v. State, 244 Ark. 676, 426 S.W.2d 800 (1968); People v. Routt, 100 Ill.App.2d 388, 241 N.E.2d 206 (1968); Annot., Custodial InterrogationMiranda Rule, 31 A.L.R.3d 565, at 587-595.
Moreover, in Michigan v. Tucker, 417 U.S. 433, 94 S.Ct. 2357, 41 L.Ed.2d 182 (1974), the United States Supreme Court held that the "fruit of the poisoned tree" doctrine does not extend to evidence secured from a statement obtained without the full Miranda warnings, when the suspect's right against compulsory self-incrimination under the Fifth Amendment has not been violated.
We conclude that the pistol was properly admitted in evidence.
*458 The defendant also contends that the inculpatory statement taken the following morning is inadmissible because he was not previously advised of all of his constitutional rights as required by Miranda v. Arizona, supra.
The defendant relies upon the following testimony of Deputy Sheriff Fusilier:
"Q. Did you advise him of any other rights besides those you stated previously?
"A. Naturally, I don't know of any officers that know all of the; possibly all the constitutional rights, but I advised him of all that I told you usually that I usually use the procedure you know."
In our opinion, the defendant mistakenly treats this as an admission that the officer did not know all of the Miranda rights and did not advise the defendant of them. When the officer's testimony is considered as a whole, as must be done, he was merely voicing the well-known dictum that no officer knows all of the rights emanating from the constitution. He then referred to his prior testimony.
His prior testimony is clear that he advised defendant of all of the rights required by Miranda v. Arizona, supra.[1]
We find, as did the trial judge, that the State affirmatively established that the defendant was advised of his constitutional rights and that his statement was otherwise free and voluntary.
Assignment of Error No. 5 is without merit.
For the reasons assigned, the convictions and sentences are affirmed.
CALOGERO, J., concurs.
DIXON, J., dissents.
NOTES
[1] "I have a card in my pocket, that I usually use, and so on and so forth, may I read it? I think I have it, I usually have it, I do this, some of my own, and refresher course on this. First of all, I told him, when I talked to Mr. Anderson, Champro, as we all know him by, around here. I told him as an officer of the law, it was my duty to tell him that, he was possibly would be, stand charged with a crime that could be of a serious nature, depending possibly on the outcome of the one person in question at the time is the one that supposedly had been shot, I told him that he had the right of course not to answer any questions, if I did question him, I told him that if he did say anything, any questions at all or any questions I might tell him or ask him that it could and possibly would have been used in a Court of Law, if there was a court of law to come up at any time (inaudible) I told him he was entitled to a lawyer, and if he couldn't hire one the State would see that he gets one, and he was entitled to this lawyer if there was any questioning going on, if he wanted one. And, I also told him that if he is being questioned out of the presence of the lawyer, he may stop answering questions, any time that he desired he doesn't have to go along with this." [Tr. 390-391].