# PEARLIE (NMN) MILHOUSE *v.* STATE OF MARYLAND

[No. 816, September Term, 1975.]

*Decided June 4, 1976.*

The cause was argued before THOMPSON, GILBERT and MASON, JJ.

*William H. Murphy, Jr.,* for appellant.

*Alexander L. Cummings, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Arthur A. Marshall, Jr., State's Attorney for Prince George's County,* and *Richard P. Arnold, Assistant State's Attorney for Prince George's County,* on the brief, for appellee.

THOMPSON, J., delivered the opinion of the Court.

Pearlie Milhouse, the appellant, was convicted of murder in the second degree and the use of a handgun in the commission of a crime of violence by a jury in the Circuit Court for Prince George's County. Sentences of 11 years on the murder conviction and five years consecutive on the handgun conviction were imposed. The principal question on appeal concerns the admissibility of an out of court statement.

The victim, husband of the appellant, was killed by one shot from a .22 caliber pistol. The bullet entered the right side of his chest, causing death from internal bleeding. The body was found in the hall of his apartment immediately outside the bedroom occupied by the appellant and the victim. There was evidence to show that the appellant had threatened to kill the victim a few hours prior to the shooting because she was enraged at the attention he had paid to Juanita Moore. He had been living with Juanita Moore until approximately a week prior to his death, when he returned to live with his wife. The threats were made after a church meeting at which the victim was the master of ceremonies for a singing performance.

Officer George A. Van Duzer testified that he responded to a call from the apartment at approximately 40 minutes after 12 midnight in the early morning hours of August 12, 1974. A young, negro male sitting on the front steps directed him to the apartment. Upon the officer's arrival at the apartment, he found the appellant between the dining and living rooms, appellant's son, aged approximately 17 in the

living room and in the hallway he found the victim. The officer asked the children what happened but they looked at their mother, then at the officer and refused to say anything. He found a .22 caliber pistol on the dresser in the bedroom. The officer took the appellant to the Bureau of Criminal Investigation and turned her over to Detective Mahlon Joseph Curran. Her two sons were brought to the bureau in two separate automobiles.

Detective Curran testified that he had a conversation with the appellant and that he advised her of her rights, reading from a standard form as to exactly what he had told her. When he asked, "Having been so advised, are you willing to make a statement?", she replied, "No." [1] The officer testified that he immediately advised the appellant that they were "investigating the death of James Milhouse and that we needed to know how it occurred, that if it was intentional, accidental, suicide, exactly what the circumstances were so that we could investigate the case. She then stated that she would make a statement." While arguing the objections out of the presence of the jury, the State's Attorney in reply to a request by the court, proffered that "[s]he made a statement in which she said . . . they had a fight at the church, that she

---

1. This testimony came in without objection, but immediately thereafter there was objection and the trial court eventually ruled that the evidence was admissible. We think the ruling was in error. It is impermissible for the prosecution to use at trial the fact that appellant invoked her right against self-incrimination in the face of an accusation. Younie v. State, 272 Md. 233, 322 A. 2d 211 (1974); Wright v. State, 26 Md. App. 60, 336 A. 2d 808 (1975); Sutton v. State, 25 Md. App. 309, 334 A. 2d 126 (1975). Of course, an accused may waive this privilege and offer evidence of the invocation of her rights in order to challenge the voluntariness of the confession. Thereafter the State's Attorney requested the trial court to instruct the jury that they should disregard this initial statement. Upon refusal by the trial judge, the appellant's counsel agreed saying, "I wouldn't emphasize it." The problem may well have been avoided if the testimony concerning the admissibility of the statement had been taken out of the presence of the jury. There was no request for this procedure by counsel and the trial court did not mention the problem *sua sponte*. *See* Dempsey v. State, 277 Md. 134, 355 A. 2d 455 (1976), which reiterates the rule that evidence concerning the admissibility of a statement should initially be received out of the presence of the jury and the jury should not be advised that the trial judge has found the statement voluntary. In certain circumstances, failure to follow the correct procedure has been found not to be reversible error. Smith v. State, 189 Md. 596, 603-606, 56 A. 2d 818 (1948); Bernos v. State, 10 Md. App. 184, 268 A. 2d 568 (1970).

574

was driven home, the victim came home, came in the bedroom, there was an altercation, he went for the gun and the gun was discharged. That is a summary of what it would be. She indicated a number of other things, but those were the essential aspects." The court ruled the statement was admissible saying, "It is not an admission. It is an explanation, what she says happened, so we are going to overrule the objection." The officer was then permitted to testify as to her statement over oral objection:

"The Witness: She then stated that her and her husband, the deceased, had gone to a church in Washington, D.C., that while they were at the church he was to sing in the group singing there and that he had paid more attention to his girl friend than to her; that after this service was over that they had argued, that they had left the church and driven to their residence on Brighseat Road and transported two other persons in their vehicle; that once they got to the residence, Mrs. Milhouse got out of the vehicle and went inside, and Mr. Milhouse took the other two persons home; that he returned approximately 45 minutes later, at which time she was asleep in bed.

"I asked her where the gun came from and she wasn't certain, but to the best of her knowledge it had been kept on the dresser in the bedroom where she was sleeping.

"I asked her if she shot her husband and she stated she did, but they were arguing, that she was standing approximately two feet from him. He reached for the gun, placed his hand on the gun and it went off accidentally and he fell to the floor.

"She stated she then took the gun, wiped it off with a handkerchief and placed it on the dresser; that she then — that her sons had then come into the area where the deceased was lying and she instructed them not to talk to the police and to call for an ambulance.

"One of the sons, which one I do not know, left and called an ambulance, and Mrs. Milhouse and the other son went into the living room and were met there by the Fire Department when they arrived.

"By Mr. Arnold:

"Q. Did you have any further conversation with regard to whether or not his hand was on the gun at the time the gun was discharged?

"A. Yes. I stated to Mrs. Milhouse that evidence would show whether or not the deceased's hands were on or near the gun when it discharged, that the deceased's hands could be swabbed for particles of gunpowder or traces of gunpowder. She at that time stated, 'Well, I am not certain his hand was on the gun, but it was near the gun.'

"Q. Did she make any statement with regard to Juanita Moore?

"A. She stated that Juanita Moore was the girl friend's name that they were arguing about. And that is all I can remember.

"Q. Was anything said with regard to a telephone number?

"A. In an attempt to find out more information on Juanita Moore, I asked for her address and her telephone number, and to the best of my knowledge she could not remember the address or may have stated she didn't know the address, but she quoted me the 7-digit phone number without referring to anything.

"Q. As being who?

"A. Juanita Moore's.

"Q. Do you recall whether she said what time it was that her husband arrived home that night?

"A. Somewhere in the vicinity of 12:30 a.m."

On appeal appellant argues the trial court committed reversible error in admitting the appellant's statement into

evidence over objection. At the outset of our discussion, we initially point out the trial judge's ruling that the statement was exculpatory and therefore admissible was in error. In *Miranda v. Arizona*, 384 U. S. 436, 477, 86 S. Ct. 1602, 16 L.Ed.2d 694 (1966), the Court said, "no distinction may be drawn between inculpatory statements and statements alleged to be merely 'exculpatory.' If a statement made were in fact truly exculpatory it would, of course, never be used by the prosecution." *Also see Pratt v. State*, 9 Md. App. 220, 223, 263 A. 2d 247 (1970).

Appellant argues the statement was not voluntary and therefore, inadmissible under the dictates of *Miranda v. Arizona, supra, Law v. State*, 21 Md. App. 13, 318 A. 2d 859 (1974) and *Nasiriddin v. State*, 16 Md. App. 479, 298 A. 2d 490 (1973). In the latter two cases we held that confessions were not admissible because the police officers did not honor the accused's invocation of his constitutional rights to remain silent. *Miranda v. Arizona, supra*, at 473-474 stated that, "If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease. At this point he has shown that he intends to exercise his Fifth Amendment privilege; any statement taken after the person invokes his privilege cannot be other than the product of compulsion, subtle or otherwise. Without the right to cut off questioning, the setting of in-custody interrogation operates on the individual to overcome free choice in producing a statement after the privilege has been once invoked." (footnote omitted).

The State contends, on the other hand, that whether or not there was a valid waiver of the appellant's Fifth Amendment rights depends on the total circumstances and points out that in *Conway v. State*, 7 Md. App. 400, 256 A. 2d 178 (1969), we held that an individual's right to remain silent once invoked may subsequently, under appropriate circumstances, be waived. We note, however, that in that case we were careful to point out:

"Under these circumstances, we think it entirely

proper that the police, *having discontinued questioning appellant in accordance with his direction,* undertake a reasonable time thereafter to again interrogate him." (Emphasis added) *Id.* at 410. ˉ

The State also relies on the recent Supreme Court case, *Michigan v. Mosley,* 423 U. S. 96, 96 S. Ct. 321, 46 L.Ed.2d 313 (1975), wherein the Court held that it was not improper for the officers to question the accused as to another crime even though he had invoked his right to silence as to one crime. Again we point out, that in referring to *Miranda v. Arizona, supra,* the Court stated at 325:

"This passage states that 'the interrogation must cease' when the person in custody indicates that 'he wishes to remain silent.' It does not state under what circumstances, if any, a resumption of questioning is permissible. The passage could be literally read to mean that a person who has invoked his 'right to silence' can never again be subjected to custodial interrogation by any police officer at any time or place on any subject. Another possible construction of the passage would characterize 'any statement taken after the person invokes his privilege' as 'the product of compulsion' and would therefore mandate its exclusion from evidence, even if it were volunteered by the person in custody without any further interrogation whatever. Or the passage could be interpreted to require only the immediate cessation of questioning, and to permit a resumption of interrogation after a momentary respite.

"It is evident that any of these possible literal interpretations would lead to absurd and unintended results. *To permit the continuation of custodial interrogation after a momentary cessation would clearly frustrate the purposes of Miranda by allowing repeated rounds of questioning to undermine the will of the person*

*being questioned.* At the other extreme, a blanket prohibition against the taking of voluntary statements or a permanent immunity from further interrogation, regardless of the circumstances, would transform the *Miranda* safeguards into wholly irrational obstacles to legitimate police investigative activity, and deprive suspects of an opportunity to make informed and intelligent assessments of their interests. Clearly, therefore, neither this passage nor any other passage in the *Miranda* opinion can sensibly be read to create a *per se* proscription of indefinite duration upon any further questioning by any police officer on any subject, once the person in custody has indicated a desire to remain silent." (Emphasis added) (footnotes omitted).

Once again, the Court was careful to point out that the continuation of interrogation immediately after the right to silence was invoked may not be proper, at least if repeated. At this time, we make no determination as to whether or not the appellant properly waived her rights under *Miranda v. Arizona, supra,* for the reason that it is evident from the trial judge's language that he never faced the problem and never made a ruling as to whether or not there was a proper waiver by a preponderance of the evidence. *Felde v. State,* 26 Md. App. 15, 336 A. 2d 823 (1975). In *Dempsey v. State, supra,* at 143-145, the Court cites a long line of Maryland cases holding or indicating the duty of the trial judge to make a preliminary ruling as to the voluntariness of a confession and then submit the issue to the jury as to whether or not they can find the confession is voluntary beyond a reasonable doubt. In *Jackson v. Denno,* 378 U. S. 368, 84 S. Ct. 1774, 12 L.Ed.2d 908 (1964), the Supreme Court of the United States ruled as a matter of constitutional law that a state judge was required to make an initial ruling as to the voluntariness of an out of court statement. In *Walker v. State,* 12 Md. App. 684, 694, 280 A. 2d 260 (1971), we said:

"Where the resolution of a purely factual

question is all that is involved, we, of necessity, give great weight to the finding of the hearing judge, and his decision will not be disturbed on appeal unless we find a clear abuse of discretion. The preliminary decision on the admissibility of a confession, however, be that decision made at a pretrial suppression hearing or while the jury is excused during the course of trial, is 'a mixed question of law and fact.' *Mulligan v. State*, 10 Md. App. 429, 431, n. 1; *Barnhart v. State*, 5 Md. App. 222, 224. It is, therefore, a situation 'where a conclusion of law as to a [constitutional] right and a finding of fact are so intermingled as to make it necessary, in order to pass upon the [constitutional] question, to analyze the facts.' *Fiske v. Kansas*, 274 U. S. 380, 385, 47 S. Ct. 655, 71 L. Ed. 1108. We accord 'an appropriate and substantial effect to [the trial court's] resolutions of conflicts in evidence as to the occurrence or non-occurrence of factual events and happenings."

Additionally, we note in the record that after the trial judge had ruled that the confession was admissible because it was exculpatory, Detective Curran testified that at the time of the questioning the appellant was not under arrest and would have been free to go except for her incriminating statements in her confession. Assuming the trial judge, on retrial, accepts that testimony as an accurate reflection of the police officer's subjective intent at the time, we note that under the facts of this case the appellant might well have believed she was in custody despite the subjective intentions of the police officer who was questioning her. An accused's reasonable belief that he is in custody would, of course, be equally coercive for the purpose of waiver of rights in making a statement as if he were in actual custody. *Cummings v. State*, 27 Md. App. 361, 341 A. 2d 294 (1975); *Shedrick and Beckwith v. State*, 10 Md. App. 579, 271 A. 2d 773 (1970); *Myers v. State*, 3 Md. App. 534, 240 A. 2d 288 (1968). For further cases on this point see 31 A.L.R.3d 565, 581 (1970).

Finally, appellant contends that the trial judge's instructions to the jury, "If you determine in this case that the gun which caused the death of Jimmie Milhouse discharged accidentally, then you may find the homicide to be excusable and find the defendant not guilty" is a violation of *Mullaney v. Wilbur*, 421 U. S. 684, 95 S. Ct. 1881, 44 L.Ed.2d 508 (1975), interpreted by *Evans v. State*, 28 Md. App. 640, 349 A. 2d 300 (1975), *cert. granted*, 2/13/76. While considering this instruction in context may not constitute a violation of the *Mullaney* rule that instructions may not place a burden of proof upon an accused, a revision of the instruction on retrial could preclude any question if there should be a subsequent conviction and a subsequent appeal.

> *Judgment reversed.*
> *Case remanded for new trial.*
> *Costs to be paid by Prince George's County.*