345 So.2d 26 (1977)
STATE of Louisiana
v.
Jo Helen WEEKS.
No. 58796.
Supreme Court of Louisiana.
April 11, 1977.
Rehearing Denied May 13, 1977.
*27 F. Clay Tillman, Jr., Tillman & Mitchell, Leesville, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., William C. Pegues, III, Dist. Atty., David W. Burton, Asst. Dist. Atty., for plaintiff-appellee.
CALOGERO, Justice.
On September 23, 1975, the Beauregard Parish Grand Jury returned a bill of indictment, charging the defendant, Jo Helen Weeks, with second degree murder, La.R.S. 14:30.1, for having fatally shot her husband, Joel P. Weeks on the evening of July 2, 1975. Having pled not guilty at her arraignment, defendant, in February of 1976, was tried by jury and convicted of manslaughter, La.R.S. 14:31, a verdict responsive to the offense charged. Defendant was thereafter sentenced to serve twelve years at hard labor in the custody of the Department of Corrections, with credit for time served. In this appeal defendant relies upon five assignments of error.
Defendant complains in assignment number one that the trial judge erred in beginning trial without first having ascertained whether she had been informed at arraignment of her right to waive trial by jury; and in her assignment number two she alleges that she was never given an opportunity to elect to be tried by the court alone.[1] The record clearly indicates that defense counsel and defendant were fully aware of defendant's option.[2]See State v. Ardoin, 340 So.2d 1362 (La.1976); State v. Sharp, 338 So.2d 654 (La.1976); State v. Rachal, 212 La. 731, 33 So.2d 501 (1947). There is no merit to these assignments.
In assignment number three, defendant alleges that the trial court failed to admonish the jury not to discuss the case among themselves or with others before releasing them at the conclusion of the first day of trial on February 23, 1976. Defendant's contention is not borne out by the record, for minutes for the 23rd day of February contain the following entry:
"The court advises the jurors that have been selected that they are not to discuss the matter with anyone nor is anyone to discuss the matter with them. . . ." *28 The record therefore shows the assignment to be without merit.
Defendant contends in her assignment number four that the trial court erroneously allowed the introduction at trial of certain statements made by her to the investigating officers before she had been advised of her Miranda rights and while she was upset at the time. The statements which form the subject matter of this assignment were those made by defendant to three police officers while they were at the scene of the shooting. When the officers arrived on the scene, they had been informed only that a killing had taken place. Each officer then inquired whether anyone knew what had happened. Defendant related to each, sometimes in response to general investigatory questioning and sometimes spontaneously, that she was present with her husband when he was killed, that her back was to him when she heard a gunshot, and that when she turned she saw him on the floor, ran to him, and heard him call out "Nigger." We conclude from a review of the record that the investigation had not begun to focus upon defendant as a possible offender at the time these statements were given.
In State v. Brown, 340 So.2d 1306 (La. 1976) we said that Miranda warnings are not a pre-requisite to admissibility of statements taken by officers during non-custodial, general, on-the-scene investigations, conducted to determine the facts and circumstances surrounding a possible crime, absent a showing that the investigation has passed the investigatory stage and has focused on the accused. See also State v. Anderson, 332 So.2d 452 (La.1976); State v. Ned, 326 So.2d 477 (La.1976); State v. Roach, 322 So.2d 222 (La.1975). The officers testified without contradiction that at the time these statements were given they had no reason to suspect that defendant had committed an offense, and that the investigation had not yet focused on her as a probable, or even possible suspect. They further testified that defendant's initial version of the incident led them to believe that an intruder had entered the home and had shot her spouse. We do not find under the circumstances presented here that the officers were compelled at this time to advise defendant of her Miranda rights.
Likewise, we find no merit in defendant's contention that the statements were involuntarily given because she was upset and under a significant amount of stress. Upon review of the record in this case, we conclude that the testimony amply supports the trial court's finding that defendant was sufficiently in possession of her mental faculties so as to make the statements voluntarily.
Defendant in assignment number five urges that the trial court erred by admitting over defense objection the testimony of Deputy Joe Bartlett of the Calcasieu Parish Sheriff's Office. The assignment is based on the contention that to admit the Deputy's testimony, after he had identified himself as a polygraph expert, in effect amounted to the introduction of polygraph results evidence at trial.
The background facts are as follows. When Deputy Bartlett was called to the stand by the state, he responded to several initial questions by relating that he lived in Sulphur, Louisiana; that he was a deputy with the Calcasieu Parish Sheriff's Department; that his duties with the department were that of a polygraph examiner; that he was employed in that capacity since 1963 and was so employed on July 3, 1975, the day following the offense. When asked whether he had occasion to take anyone's statement on July 3, he responded affirmatively. At this point, defense counsel objected and expressed the hope that the state was not going to introduce any evidence of a polygraph test because such evidence would be inadmissible.
At the request of the state the jury was thereupon excused and counsel for the state and defense presented arguments. Defense counsel argued that the results of a polygraph examination were inadmissible and that the witness' identification as a polygraph expert was "going to mislead the jury" by giving extra credence to defendant's *29 statement allegedly given to the deputy.
The state took the position that while polygraph test results are inadmissible, there was nothing to prohibit the deputy from testifying as to the content of a statement he had obtained. The prosecutor also stated that he did not intend to introduce any testimony or evidence concerning whether a polygraph had been taken or what the test result might have been. The judge allowed the state to continue its direct examination of Deputy Bartlett.
While testifying concerning a conversation he had with defendant in his office on July 3, 1975, the deputy said that defendant had voluntarily given him an oral statement after being advised of her rights, in which she related that during the course of an argument she had picked up the shotgun pointed it at her husband, pulled the trigger and shot him. Throughout the deputy's testimony, there was no reference to the fact that the statement was taken during a polygraph examination nor was any reference made to any polygraph results.
It is, of course, true that under our jurisprudence the results of polygraph examinations are unacceptable as evidence in criminal prosecutions. State v. Governor, 331 So.2d 443 (La.1976); State v. Refuge, 270 So.2d 842 (La.1974). As earlier indicated, however, there was here no testimony that the polygraph examination was conducted, nor were results of any such test alluded to.
Furthermore the jury's attention was called to the possible administration of a polygraph test more by counsel's objection in their presence (". . . I hope . . that the state is not going to try to introduce any evidence about a polygraph because we are all aware of the fact that it's inadmissible and I hope the state is not going to . . . sneak in some statement made during the course of something. . .") than by the witness' earlier testimony as to his occupation. Defendant cannot be permitted to alert the jury to the possibility that a polygraph test had been administered, then object to otherwise admissible testimony concerning an inculpatory statement because the jury might believe that the statement was given during the course of a polygraph test and might also believe it to be especially more credible.
While we do not feel that the state's initial presentation of the witness as a polygraph operator is entirely free from question, we nevertheless believe that the trial judge correctly allowed the deputy's testimony. At that point if defendant had had real concern about the possibility of ostensible inferential assumptions by the jury, he could have requested the court to admonish the jury, as contemplated by Article 771 of the Code of Criminal Procedure. No such admonition in this instance was requested.
In any event, it does not in our opinion appear that the possible error being complained of was prejudicial to the substantial rights of the accused or constituted a substantial violation of a constitutional or statutory right. C.Cr.P. art. 921. The assignment is without merit.
For the reasons above related, defendant's conviction and sentence are affirmed.
NOTES
[1] Code of Criminal Procedure Article 780 provides:

"A defendant charged with any offense except a capital offense may knowingly and intelligently waive a trial by jury and elect to be tried by the court. At the time of arraignment, the defendant in such cases shall be informed by the court of his right of waiver and election." Amended by Acts 1975, 1st Ex.Sess. No. 16, § 1, eff. Jan. 28, 1975.
See also La.Const. art. I, § 17 (1974).
[2] While the minutes of the court with respect to defendant's arraignment do not reflect that she was advised of her right to elect to be tried by jury or by the court alone, the transcription of the arraignment, which is included in the record, clearly shows that the trial court did verbalize the option available to defendant. The transcript shows that after defendant entered a not guilty plea, the judge told her:

"[By The Court]: All right. You are entitled now to be tried either by Jury or by the Court in this matter when the time comes. I give you that for the record."