Chief Judge Fuld.
Charged with killing his wife in their guffolk County home, the defendant pleaded not guilty and not guilty by reason of insanity. After his indictment and arraignment, at which he was represented by counsel, the defendant was examined, without notice to his attorney or to the court, by a psychiatrist retained by the prosecution. Based, in part, on the results of that examination, he was convicted of murder *475 in the first degree and sentenced to a term of imprisonment for life. On appeal, the Appellate Division unanimously reversed the conviction and ordered a new trial on the ground that the psychiatrist should not have been permitted to testify (31 A D 2d 838).
Shortly after his wife had been murdered, by being struck in the head with a fireplace poker and stabbed several times in the neck with a carving fork, the defendant was arrested in his home by three police officers. It was the testimony of one of them, received over objection,, that, when they sought to question the defendant, he told them that ‘ ‘ I refuse to talk until my lawyer gets here. ’ ’ He was then taken into custody and charged with the crime; as already noted, he interposed a plea of not guilty and not guilty by reason of insanity. While the defendant was in jail, awaiting the results of a court-ordered examination into his competency to stand trial, the District Attorney retained a Dr. David Abrahamsen to conduct an examination into his sanity. It was his opinion that the defendant was a malingerer who was only ‘[1] pretending ” to be mentally ill, and so he testified at the trial.
Following his conviction, the defendant took an appeal in which he urged (1) that Dr. Abrahamsen’s examination, conducted without court permission or the consent, or even the knowledge, of his attorney, violated his right to counsel and his privilege against self incrimination and (2) that it was error to permit the police officer to testify that, when questioned, the defendant refused to talk until his lawyer arrived. The Appellate Division accepted the first of these arguments unanimously. Noting that Dr. Abrahamsen was not a court appointed expert but, rather, an agent of the prosecution, it held that the rules prohibiting postindictment interrogation of a defendant in the absence of counsel were applicable to his examination by a doctor (31 A D 2d, at p. 840). In a separate concurring opinion, Justice Hopkins wrote that he also considered it error for the trial judge to have permitted the police officer to testify that the defendant refused to answer questions.
It has long been the rule in this State that, once a criminal proceeding has formally commenced, the accused has an absolute constitutional and statutory right to the assistance of counsel at every stage of the proceeding, particularly during *476 his interrogation by the prosecution. (See, e.g., People v. Waterman, 9 N Y 2d 561, 565; People v. Di Biasi, 7 N Y 2d 544, 550; see, also, Massiah v. United States, 377 U. S. 201.) “ Any secret interrogation of the defendant, from and after the finding of the indictment, without the protection afforded by the presence of counsel,” we wrote in Waterman (9 N Y 2d, at p. 565), “ contravenes the basic dictates of fairness in the conduct of criminal causes and the fundamental rights of persons charged with crime.”
Although the Waterman and Di Biasi decisions would seem, on their face, to render the testimony of Dr. Abrahamsen inadmissible, the District Attorney contends that an exception to this rule should be made where the person conducting the secret examination of the defendant is a psychiatrist who is concerned solely with the defendant’s mental competency and not with his guilt or innocence of the act charged. In support of this argument, he relies upon a recent decision of the United States Court of Appeals for the Second Circuit (United States v. Baird, 414 F. 2d 700), in which that court held that it was permissible for the trial judge to order a defendant to submit to a mental examination by a Government psychiatrist outside of the presence of counsel.[1]
The rationale underlying the decision in the Baird case was that a psychiatrist, although he questions the defendant in the course of an examination, is not concerned with the truth or falsity of his statements but only with the statements themselves, as indicia of mental capacity. As long as the psychiatrist’s testimony was limited to his conclusions, and did not reveal any incriminatory matter contained in the defendant's statements, the court reasoned, “ there was no recognizable self-incrimination problem ” and, hence, no need to require the presence of counsel (414 F. 2d, at p. 712). The reasoning which the Federal 'Court of Appeals employed in the Baird case was not unlike that contained in the decisions of numerous other courts — including our own (see People v. Di Piazza, 24 N Y 2d 342, 352-353) —which have permitted psychiatrists who have conducted an examination pursuant to court order to testify against an accused at his trial. (See, e.g., United States v. *477 Albright, 388 F. 2d 719 [4th Cir.] ; Alexander v. United States, 380 F. 2d 33 [8th Cir.]; People v. Combes, 56 Cal. 2d 135; State v. Whitlow, 45 N. J. 3; see, generally, Ann. 32 ALR, 2d 434, 473-475. But see State v. Olson, 274 Minn. 225.) We have, however, found no authority which would permit such evidence where the examination was conducted as it was in the case before us, in secret, without the permission of the court or the knowledge of defendant’s counsel.
The importance of this distinction may not be overestimated. Indeed, it was implicitly recognized in the Baird case (414 F. 2d 700, supra), the very case on which the District Attorney places principal reliance. Immediately after stating that a court-authorized examination would, with proper safeguards, pose “no recognizable self-incrimination problem ”, the court went on to say (414 F. 2d, at p. 712): “ Of course, no one can say it is not possible that such a problem may exist. But if the defense has knowledge of something unknown to the Government and the court which, if disclosed to a Government alienist, might risk grave damage to the defendant’s case through its revelation to the prosecution, innocently or otherwise, defense counsel should seek a protective order from the court in advance of the examination. ” (Emphasis suppliéd.) Thus, the court was indicating, any danger of a violation of the privilege was averted by the ability of the defendant’s lawyer to act to prevent disclosure of incriminatory matter. Quite obviously, he could do this only if he is notified, before the examination takes place, that it is going to occur.
The inherent danger of a secret examination, such as was conducted in the present case, becomes patent when we realize that a mental examination necessarily requires the use of probing questioning by a skilled practitioner and may even involve hypnosis and drugs which reduce the subject’s will power. If no one is aware that such an examination has occurred, there is no way to insure that the information so obtained will be used solely for its legitimate purpose and not as an improper means of procuring leads, as a source, in other words, of incriminatory evidence. Certainly, the mere fact that the questioner is a psychiatrist, and not a police officer or criminal investigator, furnishes no sufficient guarantee that the defendant’s self incrimination privilege will be respected. In the *478 absence of any notice to counsel or of judicial supervision, a ‘‘ medical examination” may well develop into precisely the sort of “secret interrogation” which this court decried and found objectionable in People v. Waterman (9 N Y 2d 561, supra).
Moreover, the trial court committed reversible error when it allowed the police officer, over objection and without limiting instructions, to testify that the defendant, on being questioned about the crime, asserted his constitutional right to the assistance of counsel. When this evidence was first presented to the jury, as a part of the People’s main case, its only apparent purpose was to create an inference of consciousness of guilt. Its use for such purpose was impermissible. (See, e.g., People v. Bianculli, 9 N Y 2d 468, 472; People v. Travato, 309 N. Y. 382, 386.) The circumstance that he insisted on seeing a lawyer may also have tended to rebut the defense of insanity but this did not entitle the prosecution to use his assertion of a constitutional right as evidence against him.
The protections which the Constitution affords to a person charged with crime apply, in full measure, to all criminal defendants, including those who rely upon a defense of insanity. To sanction the surreptitious examination of such a defendant, or to allow his insistence upon his constitutional rights to be used against him, would seriously impair the value of those protections.
The order of the Appellate Division should be affirmed.
Judges Burke, Scileppi, Bergan, Breitel, Jasen and Gibson concur.
Order affirmed.

. The Government psychiatrist in the Baird, case happened to he the same Dr. Ahrahamsen who testified against this defendant.