Jasen, J.
Appellant Herbert Von Werne was convicted, after a jury trial, on two counts each of criminal possession of stolen property in the second degree, illegal possession of a vehicle identification number plate and the unauthorized use of a vehicle. The Appellate Division, with one Justice dissenting, affirmed the judgment of conviction, without opinion. (50 AD2d 909.) We conclude that the order of the Appellate Division should be reversed and a new trial ordered. The trial court erred by permitting a police officer to testify that the defendant had exercised his constitutional right to remain silent in the face of police interrogation. Further, the court improperly instructed the jury on the use of circumstantial evidence to prove intent.
According to the evidence presented by the People at the trial, on March 15, 1973, New York City Police Officer Donald Gleason observed a brown 1970 Cadillac automobile parked across the street from a Queens County auto body shop. Officer Gleason, who had received special training in the detection of stolen automobiles, walked over to the car and glanced through the windshield at the vehicle identification number (VIN) plate. He noticed that the plate was attached to *586 the dashboard with "pop” rivets, rather than with rosette rivets customarily employed by the manufacturer. His suspicions aroused, the officer checked the number on the vehicle’s license plate with the Department of Motor Vehicles. The State officials advised him that the license plate "did not go to that car at all”. Gleason attempted to contact the registered owner, but was informed that this individual had never lived at the address listed on the registration. Armed with this knowledge, Officer Gleason arranged to have the vehicle brought to the precinct house for further investigation. After the car had been towed in, the officer had an opportunity to locate a second VIN plate that had been secreted in the automobile body by the manufacturer. He discovered that this second number did not match the number of the dashboard plate. Rather, this hidden number had been assigned to a vehicle that had been reported stolen on July 8, 1971, by its owner, Herman Sundelson. Sundelson was able to identify the car as the one that had been stolen from him. Further investigation revealed that the number on the dashboard VIN plate was assigned to a vehicle registered in the name of defendant’s father.
When defendant contacted the police and demanded the return of the car, Officer Gleason went to defendant’s residence, administered the standard preinterrogation warnings, and took his statement. The defendant told the officer that he was the owner of the car. Although he was unable to produce a bill of sale, defendant claimed that his father had paid $4,000 for the vehicle which, at the time of purchase, did not contain an engine or transmission. Later, the father had allegedly transferred the car to the son. Defendant admitted that, by occupation, he was a "body and fender” man and that he had worked on the car. Finally, when asked the identity of those who helped him install the engine and transmission, defendant responded, "I don’t wish to answer any more questions without my lawyer present.” The interrogation ceased and Officer Gleason left the premises.
Several days later, on March 21, 1973, Officer Gleason was on patrol in the vicinity of defendant’s residence. Passing a green 1970 Cadillac parked on the street, he again glanced through the windshield at the VIN number. As before, the VIN plate on the dashboard had been affixed with nonregulation "pop” rivets. Investigation revealed that the vehicle that had been assigned the VIN number found on the dashboard *587 had been purchased as "junk” by the defendant from Saw Mill Auto Parts on November 10, 1972. The license plates found on the vehicle had been issued to defendant’s wife. The number on the secret VIN plate did not match the number found on the dashboard. Once again, the hidden number corresponded to a number assigned to a car that had been stolen. Stathis Marulis had reported the theft of his sister’s car on October 1, 1971, and the vehicle found outside defendant’s residence was identified as that belonging to her. This, basically, was the People’s case.
The defense asserted that both Cadillacs had been obtained through legitimate purchases. Indeed, the evidence established that either the defendant or his father had purchased vehicles which had been assigned the VIN plates found on the dashboards of the two vehicles observed by Officer Gleason. However, such proof was consistent also with the prosecution’s theory that defendant had simply placed the body of each stolen vehicle onto the frame of a legitimately acquired car and switched the VIN plate from dashboard to dashboard. Thus, for each vehicle, the VIN plates on both dashboard and frame would correspond. However, the hidden VIN plate on the body would be a telltale sign of tampering.
With this résumé of the facts, we turn to an analysis of the issues presented on appeal. The principal witness for the prosecution was, of course, Officer Gleason. After describing the circumstances that led him to investigate the matter, he testified to the interrogation of the defendant that he had conducted. On direct examination, over objection, the trial court permitted the officer to state that, though the defendant had initially answered his questions, defendant "wouldn’t talk any longer, he refused to talk to me”. Defendant’s objection was overruled and his motion for a mistrial was denied. In this manner, the jury was informed that the defendant had stood on his constitutional protection against self-incrimination. We hold that the receipt of this testimony was clear error. While the facts may not have mandated the court to grant the defendant’s motion for a mistrial, the court’s failure on application of defendant’s counsel to cure the error by striking the testimony from the record or by giving curative instructions to the jury is a fatal defect.
It has long been the law in this State that the silence of a defendant, after arrest, cannot be used against him. (E.g., People v Rothschild, 35 NY2d 355, 359; People v Al-Kanani, *588 26 NY2d 473, 478; People v Rutigliano, 261 NY 103; see, also, United States v Hale, 422 US 171.) True, this defendant was not under formal arrest when interrogated in his own residence by the police officer. Yet the absence of a formal arrest is not dispositive here. A defendant in a criminal case has the right, granted by both the Federal and State Constitutions, to refuse to incriminate himself. (US Const, 5th, 14th Arndts; NY Const, art I, § 6.) The point of the cases is that a defendant’s exercise of his constitutional right may not be used against him by the prosecution. (Griffin v California, 380 US 609, 615.) The only apparent purpose of informing the jury that the defendant had elected to remain silent during police interrogation is to permit them to infer consciousness of guilt. The use of such proof for this, its only purpose, is not permissible. (People v Al-Kanani, supra.)
The admission of Officer Gleason’s testimony that the defendant had refused to answer further questions without his lawyer present was, therefore, error. In fact, the trial court compounded the error when, in marshaling the evidence, it reminded the jury that the defendant had declined to answer further questions. Under the facts and circumstances of this case, we cannot say that the error was harmless. Officer Gleason adverted to defendant’s exercise of his right to remain silent no less than three times during his' testimony. The prejudice was not dispelled by the court’s instruction that the jury should draw no inference from defendant’s failure to testify at the trial. This charge related to a different aspect of the self-incrimination protection. While the jury was informed that no inference could be drawn from defendant’s failure to testify at the trial, the court did not instruct the jury to draw no inference from defendant’s declination to answer further police inquiries. Instead, the court specifically referred, without any cautionary words, to the defendant’s exercise of his constitutional right. Given the persistence of the error in this record and the less than overwhelming proof of scienter, a matter which remains to be addressed, we believe that there is a reasonable possibility that this constitutional error may have contributed to the conviction and, hence, was not harmless beyond a reasonable doubt. (People v Crimmins, 36 NY2d 230, 237; Chapman v California, 386 US 18.) There should be a new trial.
We also believe that there was error in the court’s refusal to charge the jury, as requested, with respect to the legal effect *589 of circumstantial evidence, particularly as such evidence was used to establish defendant’s scienter. To ensure that the error will not manifest itself at the second trial, we find it necessary to articulate our. views at some length. In order to make out the three crimes with which the defendant was charged, the prosecution is required to prove that the defendant knowingly possessed stolen property (Penal Law, § 165.45), knowingly exercised control of a vehicle without the consent of the owner (unauthorized use of a vehicle) (Penal Law, § 165.05) and knowingly possessed a vehicle with a VIN plate not affixed by the manufacturer (Penal Law, § 170.70, subd [3]). A central issue at the trial was whether the defendant possessed the requisite knowledge of illegality.
On the possession of stolen property charges, the court instructed the jury that "if it appears from the evidence that the defendant either knew the property had been stolen or that the defendant received the property under such circumstances that a reasonable man of ordinary observation would have known that [this] was stolen property or if all the facts and circumstances surrounding the receipt of the car would require a reasonable man to make inquiry; and that the defendant failed to follow up the inquiry for fear that he would learn the truth and know the goods were stolen, you may find that the defendant had knowledge that the property was stolen.” This was the court’s only explanation of law with respect to proof of knowledge. The court’s language tracks the statutory presumption of knowledge which attaches when a person "in the business of buying, selling or otherwise dealing in property” possesses stolen property without making a reasonable inquiry that the person from whom he obtained it had a legal right to its possession. (Penal Law, § 165.55, subd 2.) There was no warrant to apply the presumption to this case. True, the defendant was a "body and fender” man. However, the only conclusion which flows from this admitted occupation is that the defendant was employed as a repairer of automobile bodies and fenders. There was no proof that the defendant was in the business of buying, selling or otherwise dealing in automobiles or automobile parts. There was proof that the defendant repaired cars; there was no proof at all that he sold them, bought them or dealt in them. (See People v Gilmore, 36 NY2d 898.) The presumption is inapplicable to this case and the charge, which in any event did not express to the jury the legal effect of presumptions, was erroneous.
*590 The proper charge would have been to instruct the jury that defendant’s knowledge of the illegality could be proved by circumstantial evidence. There was ample direct evidence from which the jury could have found that all the other elements of the crimes, save guilty knowledge, were present. "Knowledge, of course, may be shown circumstantially by conduct or directly by admission, or indirectly by contradictory statements from which guilt may be inferred”. (People v Reisman, 29 NY2d 278, 285, cert den 405 US 1041; see People v Ozarowski, 38 NY2d 481, 489.) While the jury should have been charged that knowledge could be proven circumstantially, the jury should also have been cautioned that the element of knowledge as any other element must be proven beyond a reasonable doubt. (CPL 70.20, 300.10, subd 2; People v Bonifacio, 190 NY 150, 153-154.) Where proof of the entire case depends upon circumstantial evidence, the standard is even more stringent. "The oft-stated rule with respect to convictions based exclusively upon circumstantial evidence is that for guilt to be proven beyond a reasonable doubt the hypothesis of guilt should flow naturally from the facts proved, and be consistent with them; and the facts proved must exclude 'to a moral certainty’ every reasonable hypothesis of innocence.” (E.g., People v Benzinger, 36 NY2d 29, 32; People v Lagana, 36 NY2d 71, 73.) However, this later standard has no application where the circumstantial evidence relates to proof of only one element. (People v Sabella, 35 NY2d 158, 168; People v Bonifacio, supra.) In this case, there was no direct proof of defendant’s knowledge. In fact, the defense contended that defendant thought the cars had been legitimately acquired from automobile dealers. Requisite knowledge could be inferred circumstantially from the evidence produced by the People. But such inference could only be drawn by a jury properly charged on the law which controls the use of circumstantial evidence to prove an element of the. offense.
In sum, the admission into evidence of the defendant’s election to exercise his constitutional right against self incrimination is an error which, quite by itself, requires reversal and a new trial. In addition, there is a fundamental error in the court’s charge which also would require reversal and which should be rectified at the new trial.
Accordingly, the order of the Appellate Division should be reversed and a new trial ordered.
*591 Chief Judge Breitel and Judges Gabrielli, Jones, Wachtler, Fuchsberg and Cooke concur.
Order reversed, etc.