[646 NYS2d 845]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOHN HENDRICKS, Appellant.

Second Department, August 19, 1996

## APPEARANCES OF COUNSEL

*Kunstler & Kuby,* New York City *(Ronald L. Kuby* of counsel), for appellant.

*Denis Dillon, District Attorney* of Nassau County, Mineola *(Tammy J. Smiley* and *John F. McGlynn* of counsel), for respondent.

## OPINION OF THE COURT

BALLETTA, J. P.

The defendant was convicted of attempted rape in the first degree based on a November 19, 1992 incident during which the defendant attempted to rape his live-in girlfriend. On appeal, the defendant claims that the trial court committed reversible error when it permitted the People, during their direct case, to introduce police testimony that the defendant, after being advised of his *Miranda* rights, indicated that he would give an oral statement but that he would not sign a written statement and that he thereafter gave an oral statement to the police. We disagree and affirm the judgment of conviction.

During the course of the trial, the People, on their direct case, presented the testimony of Detective Kenneth Diehm who had interviewed the defendant at the police station after the defendant's arrest. Detective Diehm testified as follows:

"Q: Detective, after the question on the card 'do you understand' where the word 'yes' appears, who wrote the word 'yes'?

"A: The defendant.

"Q: And the next question, 'Now that you understand, are you willing to answer questions before talking with a lawyer or having one present', who wrote the word 'yes' after that question?

"A: The defendant.

"Q: There is a signature just under that. Whose signature is that?

"A: The defendant's signature.

"Q: And when did he sign the card?

"A: After I read him his rights.

"Q: All right. Detective, after you read him his rights, did you then have an oral conversation with him?

"A: Yes, I did.

"Q: All right. Would you please tell the members of the jury what the defendant said to you and what you said to him.

"A: I told him I would like to take a detailed statement from—".

At this point, the defense counsel objected, and at a sidebar the following took place:

"MR. CROMWELL [defense counsel]: I am tempted to move for a mistrial. With this detective's experience, what he just said was absolutely unconscionable. He knows very well the defendant has no obligation to give him a detailed written statement.

"Now we know because of this past hearing that he asked for a detailed written statement and my client refused to give him one. That has no place in this trial. There should be no testimony at all about my client's refusal to give a detailed written statement because he has an absolute right not to say anything, so if the jury hears he refused to give a written statement, that's prejudicial and impermissible. * * *

"So he can testify about the oral statement, but this witness should have been instructed, and I am really shocked that that wasn't done, and I would like to believe that it was done but I am more shocked about the testimony that just came forth here, so I would ask that there be an instruction that the detective be instructed not to testify as to that, if we may take a break for Mr. Pincus to say that to the detective.

"But as to what the oral statement is, that, of course was held admissible at pretrial hearings, so that's really the only thing that I think can come in.

"MR. PINCUS [prosecutor]: Well, Judge, I have certainly told this witness that the only statement that's allowed to come in on direct examination is the statement that appears on the 85A, and he was instructed not to testify as to what's on the long form.

"But my question to him was what were the circumstances surrounding the statement that was given, and I think it's proper that he discuss what was around the statement that was given, not that he wrote out a long statement and the defendant refused to sign it, but asking him: Do you want to give me a written statement: No, I'll talk to you, but I am not signing anything.

"THE COURT: Yes, the circumstances surrounding it are proper. The objection is overruled".

The prosecution then elicited the following from Detective Diehm in front of the jury:

"Q: You can answer the question. What did you say to him and what did he say to you?

"A: I said to him: I would like to take a detailed written statement as to what transpired at the house this morning, and he told me, he said: I'm not going to sign anything else. He said: I'll talk to you but I'm not going to sign anything else.

"Q: All right. Did the defendant tell you—

"MR. CROMWELL: Again, your Honor, for the record, you have my objection to that.

"THE COURT: The objection was overruled."

The only other reference to the defendant's refusal to provide a written statement to the police occurred during the People's cross-examination of the defendant who had taken the stand on his own behalf, as follows:

"Q. And when you spoke to Det. Diehm, Detective Diehm gave you your rights, isn't that correct?

"A. He gave me a piece of card, threw it down on the table, yes, the rights.

"Q. And what did he do with the card?

"A. He said: Do you want to read this and then write a statement? And I told him: I am not in a position to write a statement."

There was no objection to this cross-examination.

It is well established that a defendant has a constitutional right to remain silent at the time of his or her arrest (NY Const, art I, § 6; US Const 5th Amend) and that his or her exercise of that right to remain silent at or after his or her arrest may not be used by the People as part of their direct case *(see, Griffin v California,* 380 US 609; *People v Basora,* 75 NY2d 992, 993; *People v Pavao,* 59 NY2d 282, 292; *People v Von Werne,* 41 NY2d 584, 588; *People v Rutigliano,* 261 NY 103). As the United States Supreme Court has stated, "it is impermissible to penalize an individual for exercising his Fifth Amendment privilege when he is under police custodial interrogation" and that the prosecution may not therefore "use at trial the fact that he stood mute or claimed his privilege in the face of accusation" *(Miranda v Arizona,* 384 US 436, 468, n 37).

The defendant argues on appeal that the admission of Detective Diehm's testimony violated his fundamental and basic

constitutional right to remain silent. We disagree. The defendant's argument misapprehends both the nature and context of his statement as well as the applicable case law.

In *People v Von Werne (supra),* the Court of Appeals held that a police officer's testimony that the defendant had initially answered his questions but that he subsequently stated that he " 'wouldn't talk any longer, he refused to talk to me' " *(People v Von Werne, supra,* at 587), was error, explaining: "It has long been the law in this State that the silence of a defendant, after arrest, cannot be used against him. (E.g., *People v Rothschild,* 35. NY2d 355, 359; *People v Al-Kanani,* 26 NY2d 473, 478; *People v Rutigliano,* 261 NY 103; see, also, *United States v Hale,* 422 US 171.) True, this defendant was not under formal arrest when interrogated in his own residence by the police officer. Yet the absence of a formal arrest is not dispositive here. A defendant in a criminal case has the right, granted by both the Federal and State Constitutions, to refuse to incriminate himself. (US Const, 5th, 14th Amdts; NY Const, art I, § 6.) The point of the cases is that a defendant's exercise of his constitutional right may not be used against him by the prosecution. *(Griffin v California,* 380 US 609, 615.) The only apparent purpose of informing the jury that the defendant had elected to remain silent during police interrogation is to permit them to infer consciousness of guilt. The use of such proof for this, its only purpose, is not permissible. *(People v Al-Kanani, supra.)" (People v Von Werne, supra,* at 587-588.)

Similarly, in *People v Scalerico* (140 AD2d 386), a police officer testified that after the defendant had made certain oral statements, the defendant was asked if he would give a written statement and that although the defendant had initially agreed to the request, he subsequently refused to give a written statement. In reversing and remitting on other grounds, this Court held that on retrial, the testimony concerning the request of the defendant to make a written statement and his later refusal should not be elicited by the prosecutor *(see, People v Scalerico, supra,* at 388).

The crucial factor in both *People v Von Werne (supra)* and *People v Scalerico (supra)* is that the defendant's refusal to talk further *(People v Von Werne, supra)* or to provide a written statement *after* making an oral one *(People v Scalerico, supra)* clearly evidenced the defendant's exercise of his right to remain silent. In both cases, the defendant's statement, when viewed within the context in which it was given, indicated a clear desire on behalf of the defendant not to answer any more questions and not to talk to the police any further.

Thus, both *People v Von Werne (supra)* and *People v Scalerico (supra)* are in accord with the well-established principle that a defendant may exercise his or her right to remain silent at any stage of the interrogation and that once he or she does so, the police must scrupulously honor that right *(see, People v Ferro,* 63 NY2d 316; *People v Kinnard,* 62 NY2d 910). ·

The United States Supreme Court has stated that: "If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease. At this point he has shown that he intends to exercise his Fifth Amendment privilege; any statement taken after the person invokes his privilege cannot be other than the product of compulsion, subtle or otherwise. Without the right to cut off questioning, the setting of in-custody interrogation operates on the individual to overcome free choice in producing a statement after the privilege has been once invoked" *(Miranda v Arizona,* 384 US 436, 473-474, *supra).*

Subsequently, the Supreme Court explained that "[t]he critical safeguard identified in the [previous] passage" *(Michigan v Mosley,* 423 US 96, 103) was a defendant's right " 'to cut off questioning' " *(Michigan v Mosley, supra,* at 103) so as to control the timing, subjects, and duration of the interrogation, all of which serves to counteract "the coercive pressures of the custodial setting" *(Michigan v Mosley, supra,* at 104). However, this is not the situation in the instant case. Here, the defendant never exercised his right to remain silent. Rather, the record clearly shows that he waived his right to remain silent. Significantly, the defendant does not contend that his waiver was invalid. Unlike *People v Von Werne (supra)* or *People v Scalerico (supra),* the defendant's statement that he would not sign a written statement was not made for the purpose of cutting off all further inquiry. There is no evidence that he was exercising his right to remain silent; indeed, he freely talked. At best, when viewed in context, the defendant merely conditioned the kind of statement that he was willing to give. The defendant's statement, "I'll talk to you but I'm not going to sign anything else", came immediately after the defendant had been apprised of his *Miranda* rights and before he began talking. When viewed in this light, it is clear that the defendant waived his right to remain silent and never indicated an intent to exercise this right.

In *People v Topping* (74 AD2d 703), the defendant argued that his refusal to make a statement while a tape recorder was playing constituted an assertion of his right to remain silent.

The Third Department rejected this argument, stating: "The testimony of both the police officers and the defendant clearly indicates that defendant was fully advised of his *Miranda* rights and nevertheless chose to make detailed oral and written statements. Defendant's mere refusal to have his statements recorded, when preceded by oral statements and followed by a written statement, can in no way be construed as an assertion of the right to remain silent" *(People v Topping, supra,* at 703-704).

Likewise, in the instant case, the defendant's statement that he would talk but that he wouldn't sign anything, when preceded by the *Miranda* warnings and followed by an oral confession, cannot be construed as an assertion of his right to remain silent.

Similarly, in *People v Sims* (135 AD2d 591), the defendant argued that a detective's testimony stating that he refused to sign a confession after orally admitting to the crime indicated that his Fifth Amendment right against self-incrimination was violated. This Court rejected that argument stating: "We find no merit to the defendant's contention that a detective's testimony stating that he refused to sign a confession after orally admitting to the crime indicated that his Fifth Amendment right against self-incrimination has been violated. The defendant's oral confession had already been admitted in evidence as it was found that he had voluntarily waived his *Miranda* rights. His refusal to sign a written waiver does not, as a matter of law, preclude a finding of a waiver of those rights *(see, Connecticut v Barrett,* 479 US 523; *People v Danaher,* 115 AD2d 905, 906)" *(People v Sims, supra,* at 592).

So, too, in the instant case, there is no dispute that the defendant waived his *Miranda* rights and that his oral confession was properly admitted into evidence *(see also, People v King,* 191 AD2d 513 [defendant did not sufficiently invoke his right to remain silent after initial waiver absent statement indicating that he did not wish to answer further questions, even though he stated that he did not want to speak to a "broad". Thus, statements made to male detective after female detective left the room were admissible]; *People v Baird,* 167 AD2d 693 [defendant did not express desire to remain silent where he asserted nothing more than right to avoid certain areas of inquiry and freely and voluntarily responded to other inquiries]; *People v Howard,* 162 AD2d 408 [defendant's statements were voluntarily made after waiving his *Miranda* rights despite his refusal to sign detective's written record of his statement]; *People v Barksdale,* 140 AD2d 531 [same]).

Since the defendant herein never invoked his right to remain silent, Detective Diehm's testimony did not constitute an improper reference to a defendant's exercise of his right against self-incrimination *(cf., People v Pavao,* 59 NY2d 282, 292, *supra).*

However, we would note that even if it were assumed for argument's sake that the trial court committed error by permitting Detective Diehm to testify regarding the defendant's refusal to sign a written statement, in this case the error may be deemed harmless *(see, People v Crimmins,* 36 NY2d 230, 237; *People v Williams,* 181 AD2d 474, 477). The only references to the defendant's refusal to sign a written statement occurred during the aforecited portions of Detective Diehm's testimony and the defendant's cross-examination where the defendant's comment clearly was not in response to a deliberate attempt by the prosecutor to elicit the statement. Further, the prosecutor made no reference to the defendant's failure to give a written statement during either his opening statement or his summation *(compare, People v Von Werne,* 41 NY2d 584, 588, *supra* [reference to the defendant's postarrest silence was not harmless "(g)iven the persistence of the error * * * and the less than overwhelming proof of *scienter"]; People v Robinson,* 191 AD2d 595 [prosecutor's continued references during opening statement and summation to testimony regarding defendant's postarrest silence, despite trial court's several attempts at curative or limiting instructions, could not be deemed harmless error]).

Additionally, in this case, the defendant's refusal to give a written statement to Detective Diehm was not the only evidence adduced at trial against the defendant. The spontaneous statement made by the defendant to the arresting officers, "What did she say, I raped her?", was before the jury. There was also, *inter alia,* the testimony of the victim and the testimony regarding the victim's injuries.

Accordingly, the judgment is affirmed.

COPERTINO, J. (concurring in result only). Because of this Court's decision in *People v Scalerico* (140 AD2d 386), wherein we held that it was error for a detective to testify that the defendant gave an oral statement but refused to give a written statement, stare decisis requires a determination that the trial court erred in allowing Detective Diehm to testify in this case that the defendant refused to give a written statement. Nevertheless, I agree with Justice Balletta's conclusion that the er-

ror was harmless beyond a reasonable doubt *(see, People v Crimmins,* 36 NY2d 230; *People v Williams,* 181 AD2d 474, 477).

MILLER and O'BRIEN, JJ., concur with BALLETTA, J. P.; COPERTINO, J., concurs in result only in a separate opinion.

Ordered that the judgment is affirmed.