People v Lentini (2018 NY Slip Op 04983)





People v Lentini


2018 NY Slip Op 04983


Decided on July 5, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: July 5, 2018

108891

[*1]THE PEOPLE OF THE STATE OF NEW YORK, Respondent,
v
MARIA LENTINI, Appellant.

Calendar Date: June 1, 2018

Before: McCarthy, J.P., Lynch, Devine, Clark and Rumsey, JJ.


E. Stewart Jones Hacker Murphy, LLP, Troy (James C. Knox of counsel), for appellant.
Karen A. Heggen, District Attorney, Ballston Spa (Gordon W. Eddy of counsel), for respondent.



MEMORANDUM AND ORDER
Devine, J.
Appeal from a judgment of the County Court of Saratoga County (Murphy III, J.), rendered June 1, 2017, upon a verdict convicting defendant of the crime of leaving the scene of an incident without reporting a personal injury.
In the early morning hours of December 6, 2015, defendant was driving on a dark road in the Town of Halfmoon, Saratoga County when she struck and killed a pedestrian in her lane of traffic. The ensuing investigation revealed that the accident went unreported for more than an hour and that defendant might have left the area for part of that period. An indictment was accordingly handed up that charged defendant with, as is relevant here, a felony count of leaving the scene of an incident without reporting a personal injury (see Vehicle and Traffic Law § 600 [2] [a], [c]). She was convicted of that count by a jury. County Court sentenced defendant to 1&frac13; to 4 years in prison, and she now appeals.[FN1]
Defendant first argues that the verdict was not supported by legally sufficient evidence [*2]and was against the weight of the evidence. Surveillance video from a nearby convenience store shows defendant's vehicle striking the victim at 2:29 a.m., which other evidence revealed caused the victim to be propelled through the windshield and sustain severe, obviously fatal injuries. The accident was not reported until 3:44 a.m., when a woman who identified herself as defendant's sister called 911. The key dispute is whether defendant left the area for a portion of that hour-plus delay and, in so doing, failed to "report said incident as soon as physically able to the nearest police station or judicial officer" before leaving the scene (Vehicle and Traffic Law § 600 [2] [a]).
The trial evidence reflected that defendant telephoned four individuals — her sister, then-boyfriend Robert Walton, Mark Howley and Brittany McNeice — in the period between the accident and the 911 call. Howley testified that he raised the issue of calling the police when a "hysterical" defendant called him soon after the accident to say that she had hit and killed someone with her car. McNeice, who was out with Walton, testified that defendant called her a little after 3:00 a.m. looking for Walton. Thereafter, at 3:27 a.m., the store surveillance video shows a black Cadillac of the type driven by defendant's sister pull into the store's parking lot. The video shows someone enter the Cadillac from the direction of the accident scene, after which the vehicle drives onto the road and toward it. McNeice drove by the accident scene with Walton around 3:39 a.m. and testified that, while stopping near the scene to let him out and in the parking lot to retrieve him, she only saw defendant's vehicle at the scene and did not spot defendant or anyone else in the area. The 911 call was made at 3:44 a.m. and, at 3:45 a.m., the surveillance video shows the Cadillac turning into the parking lot from what appears to be the direction opposite the accident scene. The vehicle stops for several seconds, then turns around, stops for a moment at the lot's exit and turns onto the road toward the accident scene. When first responders arrived at the accident scene a few minutes later, they found defendant, her sister, her sister's Cadillac and Walton.
Viewing this evidence in the light most favorable to the People (see People v Reed, 22 NY3d 530, 534 [2014]; People v Danielson, 9 NY3d 342, 349 [2007]), a valid line of reasoning existed from which the jury could find beyond a reasonable doubt that defendant was capable of reporting the accident to the police and left the scene with her sister without doing so (see People v Field, 175 AD2d 291, 291-292 [1991]; People v Petterson, 103 AD2d 811, 811 [1984]). The verdict is, as a result, founded upon legally sufficient evidence. An acquittal would not have been unreasonable given the proof that defendant was extremely upset in the aftermath of the accident, McNeice's acknowledgment that she was distracted during her time near the accident scene and refused to look toward defendant's vehicle, and the lack of evidence showing where, if anywhere, defendant and her sister went in the minutes before the 911 call. The jury could nevertheless credit McNeice's testimony that defendant was not at the scene or in the parking lot in the minutes before 911 was called, especially in conjunction with the surveillance video showing the comings and goings of the Cadillac. We accord deference to the credibility determination of the jury and, after "review[ing] any rational inferences that may be drawn from the evidence and evaluat[ing] the strength of such conclusions," cannot say that the verdict was against the weight of the evidence (People v Danielson, 9 NY3d at 348; see People v Field, 103 AD2d at 292).
Defendant next contends that County Court abused its discretion in declining to declare a mistrial after repeated references to her desire to speak to an attorney on the night of the accident. To that end, proof of a defendant's invocation of his or her right to counsel may "create[] a prejudicial inference of consciousness of guilt" and has no place in the People's [*3]case-in-chief (People v Hunt, 18 AD3d 891, 892 [2005]; see People v Von Werne, 41 NY2d 584, 588 [1977]; People v Wright, 126 AD3d 1036, 1038 [2015], lv denied 26 NY3d 1094 [2015]). Defendant's strategy at trial relied in large part upon the fact that she was not at fault in the accident but did witness the victim's body being propelled through her windshield and coming to rest inches away from her. She relied upon this state of affairs to contend that her failure to contact authorities was not because she was "coldly calculating," but because she was in shock and incapable of doing so. Defendant further questioned the proof supporting the People's hypothesis that she left the scene with her sister before the 911 call.
Any indication that defendant sought to consult with counsel would undermine the foundation of this defense by prejudically suggesting that she was conscious of guilt, rational enough to consider the question of counsel and, perhaps, capable of reporting the accident or taking steps to avoid doing so (see e.g. People v Al-Kanani, 26 NY2d 473, 478 [1970]). Defendant therefore moved in the midst of jury selection to "preclude any testimony regarding [defendant's] determination or consideration to consult with counsel" on the night of the accident. The People gave assurances that they did not intend to elicit that testimony and County Court directed them not to do so. This ruling was quickly violated by the People's second witness, a deputy sheriff who responded to the 911 call and testified that defendant chose not to be interviewed about the accident because "she did not feel comfortable answering questions . . . without her lawyer present." Defendant objected and moved for a mistrial. County Court declined to grant a mistrial, but was troubled by the violation of its pretrial ruling and elected to strike the entirety of the officer's testimony, bar any further testimony from him and give a curative instruction to the jury.
County Court determined that the improper testimony was not deliberately elicited and, insofar as the officer's testimony was stricken and "an immediate and appropriate curative instruction [given] to alleviate any prejudice," the error might not have been "so egregious as to deny defendant a fair trial" by itself (People v Miller, 239 AD2d 787, 788 [1997], affd 91 NY2d 372 [1998]; see People v Dorsey, 3 AD3d 590, 592 [2004]; cf. People v Russell, 199 AD2d 345, 346 [1993]). This calculus changed when the pretrial ruling was violated again by Walton, who testified that defendant wanted his "attorney's number" when they spoke by telephone after the accident. Defendant immediately objected and renewed the application for a mistrial and, in the colloquy that ensued, the People expressed their surprise at the testimony, but acknowledged that they had not instructed Walton to avoid the topic. County Court found the People's conduct "extremely disturbing" and addressed it by striking Walton's testimony in its entirety, precluding any further testimony from him and giving a curative instruction to the jury. Nevertheless, "[a] court's instructions to a jury to disregard matters improperly brought to their attention cannot 'always assure elimination of the harm already occasioned'" (People v Calabria, 94 NY2d 519, 523 [2000], quoting People v Carborano, 301 NY 39, 42-43 [1950]). In our view, these repeated violations of the pretrial ruling, in a case where defendant's capacity to act and her actions after the accident were in serious dispute, caused harm that could not be reliably dissipated. County Court therefore abused its discretion in declining to declare a mistrial (see People v Shaulov, 25 NY3d 30, 35 [2015]; People v Randolph, 18 AD3d 1013, 1016 [2005]; People v Vasquez, 120 AD2d 757, 757-758 [1986]; People v Cobb, 104 AD2d 656, 659 [1984]) and, inasmuch as we do not agree with defendant that the People deliberately acted to provoke a mistrial (see People v Russell, 199 AD2d at 346; cf. Matter of Gorghan v DeAngelis, 7 NY3d 470, 473 [2006]), we remit for a new trial.
Defendant's remaining arguments are academic.
McCarthy, J.P., Lynch, Clark and Rumsey, JJ., concur.
ORDERED that the judgment is reversed, on the law, and matter remitted to the County Court of Saratoga County for a new trial.



Footnotes

Footnote 1:Defendant has remained free on bail pending appeal pursuant to orders of this Court (2017 NY Slip Op 87414[U] [2017]; 2017 NY Slip Op 95670[U] [2017]).